## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHELLE VONNIEDA-LAGRASSA**, individually and on behalf of all others similarly situated, **ASHLEY MONROE**, individually and on behalf of all others similarly situated, and **JOANNA MCKENNA**, individually and on behalf of all others similarly situated | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND ENDORSED HEREON** |
| Plaintiffs, | |
| v. | |
| **NATIONSTAR MORTGAGE LLC, d.b.a. RIGHTPATH SERVICING**, | |
| Defendant. | |

Plaintiffs Michelle VonNieda-LaGrassa, Ashley Monroe, and Joanna McKenna, each individually and on behalf of all others similarly situated, by and through counsel, bring this action against Defendant Nationstar Mortgage LLC d.b.a. RightPath Servicing and state as follows for their Class Action Complaint:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Michelle VonNieda-LaGrassa ("Ms. VonNieda-LaGrassa") and Ashley Monroe ("Ms. Monroe") are each a natural person residing in Lancaster County, Pennsylvania.

2.      Plaintiff Joanna McKenna ("Ms. McKenna") is a natural person residing in Lehigh County, Pennsylvania.

3.      Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing and Mr.Cooper ("Defendant" or "Nationstar") is a foreign limited liability company

incorporated under the laws of the State of Delaware that maintains its headquarters and principal place of business at 8950 Cypress Waters Blvd., Dallas, TX 75019.

4.    Nationstar does business in the state of Pennsylvania and is licensed to do business in the state of Pennsylvania as a foreign limited liability company.

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

6.    This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

7.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as Ms. VonNieda-LaGrassa, Ms. Monroe, and Ms. McKenna (collectively "Plaintiffs") each reside within this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## STATEMENT OF FACTS

### *FHA Mortgages and the Regulations of the HUD Secretary*

8.    Every residential mortgage loan that is insured by the Federal Housing Administration ("FHA"), including Plaintiffs' loan with Nationstar, contains substantially similar contractual provisions requiring lenders to comply with the rules and regulations promulgated by the Secretary ("Secretary") of the United States Department of Housing and Urban Development ("HUD").

9.    Pursuant to 12 U.S.C. § 1715u(a), the Secretary has the authority to promulgate regulations concerning the loss mitigation options available to borrowers in default on their FHA-insured mortgage obligations.  That statutory provision reads:

> Upon default or imminent default, as defined by the Secretary of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including but not limited to actions such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure, as required, but not including assignment of mortgages to the Secretary under section 1710(a)(1)(A) of this title) or subsection (c), as provided in regulations by the Secretary.

12 U.S.C. § 1715u(a).

10.    The Secretary's rules and regulations relative to the servicing of FHA-insured mortgage loans for single family homes—such as Plaintiff's Mortgage—are set forth in the FHA's *Single Family Housing Policy Handbook 4000.1* ("SF Handbook").

11.    The SF Handbook requires a mortgagee to ensure all mortgages insured by the FHA that are delinquent are serviced in accordance with FHA requirements and all applicable laws. SF Handbook 4000.1 at III.A.2.a.ii, March 31, 2022.

12.    Further, HUD regulations require mortgagees that sell FHA-insured mortgages to "utilize HUD's Loss Mitigation Options to avoid foreclosure, when feasible." HUD 4000.1 III.A.2.j., September 26, 2022.

13.    The Secretary and HUD limit mortgagees' rights in the case of payment defaults through their policies pertaining to loss mitigation as contained in the SF Handbook. SF Handbook at III.A.2.r.ii(C)(1)(a)-(b), July 12, 2022 (requiring mortgagees to perform a complete review of borrowers' applications for loss mitigation options before proceeding to a foreclosure sale).

14.    Due to the Presidentially-Declared COVID-19 National Emergency, the Secretary and HUD updated the SF Handbook to require mortgagees to review borrowers

for certain home retention options without a Borrower having to submit a complete loss mitigation application. *See*, *inter alia*, SF Handbook at III.A.2.o., September 26, 2022.[1]

15. One such category of loss mitigation options is referred to as "COVID-19 Recovery Loss Mitigation Options" ("COVID-19 Recovery Options") which were to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the [Principal and Interest ("P&I")] portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

16. Mortgagees must review all borrowers for COVID-19 Recovery Options:

(a) If the borrower was in a COVID-19 forbearance, no later than the earlier of one hundred twenty (120) days of the borrower's completion or expiration of a COVID-19 forbearance plan;

(b) If the borrower was not in a COVID-19 forbearance, when the borrower is 90 or more days delinquent and the borrower affirms they have been negatively impacted by COVID-19 and within 120 days from the date of a Borrower's request for loss mitigation.

*See*, SF Handbook at III.A.2.o.iii.(B)(1)-(2).

17. Of note, "The COVID-19 Recovery Options are not incentivized for Mortgagees" meaning that, unlike with other loss mitigation options, a mortgagee does not

---

[1] On February 13, 2023, HUD published Mortgage Letter 2023-03 which had to be implemented no later than April 30, 2023. *See*, <u>Exhibit 1</u>. Through this letter, all "FHA-HAMP Options are temporarily suspended and must not be offered through October 30, 2024. Mortgagees must evaluate all Borrowers for the COVID-19 Recovery Home Retention Options." *See*, <u>Exhibit 1</u>. That is, the COVID-19 Recovery Home Retention Options became the exclusive loss mitigation options available for FHA Loans.

receive any incentive from HUD for offering and entering borrowers into COVID-19 Recovery Options. *See*, SF Handbook at III.A.2.o.iii.(A).

18.    In reviewing borrowers for COVID-19 Recovery Options, the first step in the "waterfall" is to see if a borrower qualifies for a "Standalone Partial Claim" ("SPC") to reinstate their mortgage and resume making their contractual mortgage payments. *See*, SF Handbook at III.A.2.o.iii.(C)(1).

19.    Mortgagees "***must evaluate*** Owner-Occupant Borrowers impacted by COVID-19 for a COVID-19 Recovery [SPC]." *See*, SF Handbook at III.A.2.o.iii.(C)(1) (emphasis added).

20.    The only eligibility requirements for an SPC are that: (1) The "property is owner-occupied"; and (2) "the Borrower indicates they have the ability to resume making on-time Mortgage Payments" *See*, SF Handbook at III.A.2.o.iii.(C)(1)(a).

21.    In relation to SPCs, Mortgagees must ensure that:

(a)  The SPC fully reinstates the mortgage;

(b)  Only includes amounts needed to bring the loan current;

(c)  The SPC "not exceed [30][2] percent of the unpaid principal balance as of the date of Default at the time of payment of the initial Partial Claim less any previous Partial Claims paid."

*See*, SF Handbook at III.A.2.o.iii.(C)(1)(b).

---

[2] Through Mortgagee Letter 2023-03 HUD increased the available total partial claim available from twenty-five percent (25%) of the unpaid principal balance of a loan as of the date of default to thirty percent (30%) of the unpaid principal balance of a loan as of the date of default. *See*, <u>Exhibit 1</u>.

22.     In calculating the available SPC, a mortgage "must first calculate [30] percent of the unpaid principal balance as of the date of Default" then "then subtract any previous Partial Claims paid to determine the available Partial Claim amount that can be used for the COVID-19 Recovery Standalone Partial Claim." *See*, SF Handbook at III.A.2.o.iii.(C)(1)(b).

**Homeowner Assistance Funds in Relation to the Servicing of HUD Loan and Loss Mitigation**

23.     The Homeowner Assistance Fund (HAF) was authorized by the American Rescue Plan Act, provides funds to support homeowners facing financial hardship associated with the Presidentially-Declared COVID-19 National Emergency. *See*, https://home.treasury.gov/ policy-issues/coronavirus/assistance-for-state-local-and-tribal-governments/homeowner-assistance-fund.

24.     Through HAF, funds were distributed to states, including Pennsylvania, to be used for assistance with mortgage payments, homeowner's insurance, utility payments, and other specified purposes.

25.     Funds issued through HAF programs are one of the COVID-19 Recovery Loss Mitigation Options. *See*, <u>Exhibit 1</u>.

26.     HUD expressly provides that "[a]s permitted by the jurisdiction's HAF program, ***HAF funds may be used in connection with the Borrower's FHA-insured Mortgage or any Partial Claim Mortgage*** in a manner consistent with the respective mortgage documents and FHA requirements."

27.     In addition, HUD has further clarified its policy regarding HAF funds in relation to loss mitigation through "Frequently Asked Questions" promulgated and posted on its website:

Question
If approved by the state, are Mortgagees required to accept the Homeowner's Assistance Fund (HAF)?
Answer
Yes.  HUD requires Mortgagees to inform Borrowers suffering financial distress that these additional resources may be available through their state. ***As permitted by the jurisdiction's Homeowners Assistance Fund (HAF) program, HAF funds designated to cure a delinquent mortgage must be used in connection with the Borrower's FHA-insured mortgage or any partial claim mortgage in a manner consistent with the respective mortgage documents and FHA requirements*** [emphasis added].

*See*, a printout of the pertinent "Frequently Asked Question" section of HUD's website (https://answers.hud.gov/FHA/s/knowledgearticledetail?recordId=ka03d0000000kSZAAY)  (last accessed July 24, 2023), attached as **<u>Exhibit 2</u>**.

28.     That is, if a jurisdiction's HAF program permits funds issued through its program to be used in conjunction with  loss mitigation options offered by  HUD, *specifically including partial claims*, then a servicer **must** utilize these funds in conjunction with such options.

### *Plaintiffs' and Class Members' Loans*

29.     Nationstar is the servicer of Plaintiffs' Loans as well as the notes, and mortgages on real property that secure the notes (collectively, the "loans") of the members of the Partial Claim Class (defined *infra*), the HAF Partial Claim Class (defined *infra*), and the NOE Subclass (defined *infra*) (collectively, the "Classes").

30.     Plaintiffs' loan and the loans of the members of the Classes contain substantially similar language, as they were drafted using standardized templates, specifically, the model uniform instruments required by the FHA.

31.     Plaintiffs' loan and the loans of the members of the Classes are each insured by the FHA and are required to be serviced in accordance with FHA requirements and all applicable laws including the HUD guidelines contained in the SF Handbook.

32.     Plaintiffs, each member of the Classes, and Nationstar are each persons as defined by the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. C.S.§§ 201-1, *et seq*., as each of their loans arose from the purchase of goods primarily for personal, family or household purposes as defined by the UTPCPL, and Nationstar's actions and practices described herein were conducted as part of trade or commerce under the UTPCPL. 73 Pa. C.S. §§ 201-2(2)-(3); 201-9.2.

### *Nationstar's Improper Refusal to Issue Standalone Partial Claims*

33.     Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class member were impacted, directly or indirectly, by the Presidentially-Declared COVID-19 National Emergency, fell delinquent on their mortgages.

34.     Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class member subsequently requested loss mitigation assistance from Nationstar.

35.     Nationstar reviewed Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class member for eligibility for COVID-19 Recovery Options.

36.     Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class member had sufficient partial claim amounts available to fully reinstate their loans through an SPC.

37.     Nationstar failed to approve Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class member for an SPC.

38.     Nationstar's improper refusal or failure to approve Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class member for an SPC to reinstate their Loans constitute a failure to act in compliance with the regulations of the HUD Secretary and evidence a lack of reasonable skill, care, and diligence, as well as a failure to act good faith and with fair dealing and constitute fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding with respect to each of the loans.

39.     Nationstar, in sending correspondence stating or otherwise communicating to Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class member that they were ineligible for an SPC to fully  reinstate their loans, engaged in conduct constituting fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding

40.     As COVID-19 Recovery Options are not incentivized as other loss mitigation options permitted by the regulations of the HUD Secretary, it is possible that Nationstar is steering borrowers away from options such as SPCs in order to obtain incentives for placing borrowers in other loss mitigation options.

41.     Nationstar's conduct has caused Ms. VonNieda-LaGrassa, Ms. Monroe, and Partial Claim Class members to suffer significant pecuniary and non-pecuniary damages.

42.     Ms. VonNieda-LaGrassa, Ms. Monroe, and Partial Claim Class members seeking to obtain other loss mitigation relief, will have to incur costs, expenses, and lost time in further requesting loss mitigation that otherwise would not have been and should not have been necessary.

43.     Presuming Ms. VonNieda-LaGrassa, Ms. Monroe, and Partial Claim Class members can subsequently obtain a loss mitigation option, it will likely be in the form of an SPC with a higher balance, or a combined partial claim and loan modification. Any such modification is going to extend the term and restart the amortization of Ms. VonNieda-LaGrassa's, Ms. Monroe's, and Partial Claim Class members' loans causing them to repay significantly more in interest over the course of their loans than if they were reinstated through an SPC which does not accrue interest. Moreover, due to rapidly rising interest rates, there is a strong likelihood that in addition to increased principal balances which would negatively affect the equity in Ms. VonNieda-LaGrassa's, Ms. Monroe's, and Partial Claim Class members' loans, such  modifications will have significantly higher interest rates and will place a higher monthly financial obligation on Ms. VonNieda-LaGrassa, Ms. Monroe, and Partial Claim Class members which may be wholly unaffordable and would affect their ability to obtain other credit due to increased debt-to-income ratios..

44.     Ms. VonNieda-LaGrassa, Ms. Monroe, and Partial Claim Class members, if unable to qualify for or unable to afford a subsequent loan modification, will remain at risk of foreclosure and of the loss of their homes and are likely to incur costs and legal fees to defend against foreclosure actions initiated in court and file for bankruptcy protection.

45.     Ms. VonNieda-LaGrassa, Ms. Monroe, and Partial Claim Class members have further been caused to suffer severe emotional distress driven by Nationstar's actions and by the tangible fear that Nationstar's failure to properly issue SPCs as required by the regulation of the HUD Secretary, would result in the loss of their homes to foreclosure sale.

***Nationstar's Improper Refusal to Apply HAF Funds in Conjunction with Partial Claims***

46.    Plaintiffs and each HAF Partial Claim Class Member were impacted, directly or indirectly, by the Presidentially-Declared COVID-19 National Emergency, fell delinquent on their mortgages.

47.    Plaintiffs and each HAF Partial Claim Class Member sought and obtained conditional approval for assistance through the Pennsylvania Homeowner Assistance Fund (PAHAF).

48.    Plaintiffs' and HAF Partial Claim Class Members' funding explicitly provided that the PAHAF funding could be used in conjunction with other loss mitigation options so long as such would result in a full reinstatement of the account.

49.    Plaintiffs and HAF Partial Claim Class Members were approved for PAHAF funding that was insufficient to fully reinstate their loans.

50.    If Nationstar applied the Plaintiffs' and HAF Partial Claim Class Members' PAHAF funding in conjunction with issuing the partial claim amounts available to each of them, such amount would have fully reinstated each of their loans.

51.    Nationstar, however, refused to apply Plaintiffs' and HAF Partial Claim Class Members' PAHAF funding in conjunction with the partial claim amounts available to them.

52.    As discussed, *supra*, if a jurisdiction's HAF program, such as PAHAF, permits HAF funding to be used in conjunction with a partial claim, a servicer, such as Nationstar, *must* use the HAF funds in conjunction with this option. *See*, *inter alia*, **Exhibit 2**.

53.     Nationstar's refusal to apply Plaintiffs' and each HAF Partial Claim Class members' PAHAF funding in conjunction with the partial claim option was improper and against HUD guidelines. *See*, Exhibit 2.

54.     Nationstar's improper refusal to apply Plaintiffs' and each HAF Partial Claim Class members' PAHAF funding in conjunction with the partial claim option of the HUD Secretary and evidence a lack of reasonable skill, care, and diligence and constitute fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding in relation to the loans.

55.     Nationstar's actions, in sending correspondence stating or otherwise communicating to Plaintiffs and each HAF Partial Claim Class member that they were to unable or otherwise refusing to apply Plaintiffs' and each HAF Partial Claim Class members' PAHAF funding in conjunction with the partial claim option for a Recovery Modification constitute fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding in relation to the loans

56.     Nationstar's conduct has caused Plaintiffs and HAF Partial Claim Class members to suffer significant pecuniary and non-pecuniary damages.

57.     Nationstar's conduct has foreclosed Plaintiffs and HAF Partial Claim Class members from utilizing up to Fifty Thousand Dollars ($50,000.00) in  available PAHAF funding for which each was conditionally approved and which Plaintiffs and HAF Partial Claim Class members would not have to repay out of pocket.

58.     Plaintiffs and HAF Partial Claim Class members seeking to obtain other loss mitigation relief, will have to incur costs, expenses, and lost time in submitting loss mitigation applications that otherwise would not have been and should not have been necessary.

59.    Presuming Plaintiffs and HAF Partial Claim Class members can subsequently obtain a loss mitigation option, it will be in the form of an SPC with a higher balance, or a combined partial claim and modification. Any such modification is going to extend the term and restart the amortization of Plaintiffs' and HAF Partial Claim Class members' loans causing Plaintiffs to repay significantly more in interest over the course of their loans than if they were reinstated through PAHAF funds used in conjunction with partial claim funds. Moreover, due to rapidly rising interest rates, there is a strong likelihood that in addition to increased principal balances which would negatively affect the equity in Plaintiffs' and HAF Partial Claim Class members' loans, such modifications will have significantly higher interest rates and will place a higher monthly financial obligation on Plaintiffs and HAF Partial Claim Class members which may be wholly unaffordable and would affect their ability to obtain other credit due to increased debt-to-income ratios.

60.    Plaintiffs and HAF Partial Claim Class members, if unable to qualify for or unable to afford a subsequent loan modification, will remain at risk of foreclosure and of the loss of their homes and are likely to incur costs and legal fees to defend against foreclosure actions initiated in court and file for bankruptcy protection.

61.    Plaintiffs and HAF Partial Claim Class members have further been caused to suffer severe emotional distress driven by Nationstar's actions and by the tangible fear that Nationstar's failure to utilize PAHAF funds in conjunction with their available partial claim amounts as required by the regulation of the HUD Secretary, would result in the loss of their homes to foreclosure sale.

## FACTS RELEVANT TO PLAINTIFFS MS. VONNIEDA-LAGRASSA AND MS. MONROE

62.    Ms. VonNieda-LaGrassa and Ms. Monroe fell upon financial hardships and defaulted on their obligations in relation to their FHA-insured mortgage loan.

63.    Nationstar initiated foreclosure proceedings against Ms. VonNieda-LaGrassa and Ms. Monroe for which they retained the assistance of Mid Penn Legal Services to represent their interests in the foreclosure proceedings.

64.    At all times relevant, Ms. VonNieda-LaGrassa and Ms. Monroe have had potential partial claim funds available to them in an amount of up to $70,435.96 (as of January 31, 2023 per Mortgagee Letter 2023-03).

65.    The available funds for a potential SPC, at numerous points in the past, were more than sufficient to fully reinstate their loan.

66.    During the course of the foreclosure proceedings, the matter was referred to the Court's Residential Mortgage Foreclosure Diversion Program in an attempt to negotiate a resolution of the foreclosure proceedings through loss mitigation review or otherwise.

67.    Ms. VonNieda-LaGrassa and Ms. Monroe requested to be reviewed by Nationstar for COVID-19 Loss Mitigation Options.

68.    Nationstar sent a "Mortgage Loan Statement" generated August 18, 2022 to Ms. VonNieda-LaGrassa and Ms. Monroe stating that as of and including the payment due and owing for September 1, 2022, the "Reinstatement Amount Due" for their loan was $55,522.07. *See*, a copy of such statement, attached as **Exhibit 3**.

69.    As of such date and generally prior to August 27, 2022, the amount available to Ms. VonNieda-LaGrassa and Ms. Monroe for a standalone partial claim was $58,696.63—that is, twenty-five percent (25%) of the unpaid principal balance at the time of their default of $234,786.55.

70.    Rather than issue an SPC to fully reinstate their loan, on or about August 27, 2022, Nationstar sent correspondence to Ms. VonNieda-LaGrassa and Ms. Monroe approving them for a "COVID-19 Recovery Modification with Partial Claim" (the "August 2022 Offer") with the following terms:

(a) Total Monthly Payments $1,741.80

(b) Principal and Interest Payment $1,118.47

(c) Interest Rate 5.375%

(d) Remaining Term 480

(e) Maturity Date 09/01/2062

(f) Unpaid Principal Balance $279,174.68

(g) Interest Bearing Principal Balance $220,478.05

(h) Partial Claim Amount $58,696.63

*See*, a copy of the August 2022 Offer, attached as **<u>Exhibit 4</u>**.

71.    That is, despite the reinstatement amount being less than the amount of the Partial Claim being issued through the August 2022 Offer, and despite Nationstar being able to fully reinstate the Loan through an SPC—even if Nationstar were to include the payment of $1,760.44 that would come due and owing on October 1, 2022 and the projected escrow shortage of $1,243.48 referenced in the August 2022 Offer—Nationstar refused to offer an SPC and attempted to have Ms. VonNieda-LaGrassa and Ms. Monroe enter into a modification that would, *inter alia*, restart the amortization of their loan at an interest rate significantly higher than their current interest rate of 4.250%, extend the term of their loan by 180 months, and require the payment of significantly  higher amounts of interest over the remaining life of the modified loan. *See*, <u>Exhibits 3 and 4</u>.

72.     On or about December 7, 2022, PAHAF sent correspondence to Ms. VonNieda-LaGrassa conditionally approving her for PAHAF funds in the amount of $50,000.00 good through December 21, 2022 (the "December 2022 PAHAF Approval"). *See*, a copy of the December 2022 PAHAF Approval, attached as **Exhibit 5**.

73.     Per the December 2022 PAHAF Approval, PAHAF explicitly stated that Ms. VonNieda-LaGrassa and Ms. Monroe could utilize or "leverage" these funds in conjunction with "other loss mitigation" that would result in full reinstatement of the account. *See*, Exhibit   5.

74.     At such time, the verified delinquency amount was $61,388.00, but Nationstar refused to permit the PAHAF funds to be used in conjunction with such amounts which could have easily reinstated the Loan only utilizing a small portion of the available partial claim funds at that time of $58,696.63.

75.     As of January 31, 2023, per Mortgagee Letter 2023-03,  Ms. VonNieda-LaGrassa and Ms. Monroe had potential partial claim funds available to them in an amount of up to $70,435.96 which was more than sufficient over *at least* the next three (3) months to fully reinstate the loan.

76.     Ms. VonNieda-LaGrassa and Ms. Monroe, through counsel, began to converse with Nationstar's counsel in an attempt to have Nationstar apply the PAHAF funds in conjunction with loss mitigation options.

77.     On May 22, 2023, Nationstar's counsel, Heather Riloff, informed counsel for Ms. VonNieda-LaGrassa and Ms. Monroe that Nationstar "confirmed they do not allow HAF funds to be used in conjunction with a loan modification/partial claim".

78.     On or about June 1, 2023, Ms. VonNieda-LaGrassa and Ms. Monroe through Julie Foster at Mid Penn Legal Services, sent correspondence consisting of or constituting a notice of error to Nationstar at the address Nationstar designated for receipt of such correspondence pursuant to, *inter alia*, 12 C.F.R. §1024.35(c) (the "Designated Address") alleging that Nationstar committed various errors in relation to their loan by improperly refusing to apply PAHAF funds in conjunction with available partial claim funds to reinstate her loan (the "VonNieda-LaGrassa NOE"). *See*, a copy of the VonNieda-LaGrassa NOE, attached as **Exhibit 6**.

79.     On June 14, 2023, PAHAF sent correspondence to Ms. VonNieda-LaGrassa again conditionally approving her for PAHAF funds in the amount of $50,000.00 good through July 31, 2023 (the "June 2023 PAHAF Approval"). *See*, a copy of the June 2023 PAHAF Approval, attached as **Exhibit 7.**

80.     As of such time, the verified delinquency amount per PAHAF was $74,920.76.

81.     Per the June 2023 PAHAF Approval, PAHAF explicitly stated that Ms. VonNieda-LaGrassa and Ms. Monroe could utilize or "leverage" these funds in conjunction with "other loss mitigation" that would result in full reinstatement of the account. *See*, Exhibit 7.

82.     To date, Nationstar has refused to apply the PAHAF funding in conjunction with any loss mitigation option available to Ms. VonNieda-LaGrassa and Ms. Monroe despite the fact the PAHAF funding and the available partial claim funds being more than sufficient to fully reinstate the loan.

83.    On June 30, 2023 and July 10, 2023, Nationstar sent correspondence in response to the VonNieda-LaGrassa NOE (the "VonNieda-LaGrassa Response"). *See*, a copy of the VonNieda-LaGrassa Response, without enclosures, attached as **Exhibit 8**.

84.    Through the VonNieda-LaGrassa Response, in relation to the PAHAF funds being used in conjunction with loss mitigation options such as a partial claim, which PAHAF refers to as the "P program", Nationstar stated that it does not participate in the P program, without further explanation, and that "HAF funds cannot be used as a contribution toward a *modification*  [emphasis added]." *See*, Exhibit 8.

85.    Through the VonNieda-LaGrassa Response, Nationstar provided no information or response was provided as to Nationstar's refusal to apply the PAHAF funds in conjunction with a *Partial Claim* which would have been more than sufficient to fully reinstate the Loan. *See*, Exhibit 8.

86.    On June 20, 2023 Nationstar sent correspondence to Ms. VonNieda-LaGrassa and Ms. Monroe stating that they were approved for a Partial Claim and Recovery Modification (the "June 2023 Offer") which had even *less* favorable terms than the August 2022 Offer:

Partial Claim: $70,435.96
Monthly P& I Payment: $1,385.02
Interest Rate: 7.0000%
Amortization Duration: 480 months
Modified Interest Bearing Principal Balance: $222,875.67

*See*, a copy of the June 2023 Offer, attached as **Exhibit 9.**

87.    Nationstar's improper actions caused Ms. VonNieda-LaGrassa and Ms. Monroe to suffer from actual and proximate damages including, but not limited to:

(a) Being precluded from the opportunity to reinstate the Loan through an SPC which would have reinstated the Loan, without needing to modify the Loan, thereby resetting the amortization, increasing their payment, and increasing their interest rate from 4.250% to upwards of 7.000%, and which would allow them to keep their original, lower P&I payment;

(b) Being precluded from the opportunity to reinstate the Loan through a partial claim in conjunction with the application of PAHAF funds which would have reinstated the Loan, without needing to modify the Loan, thereby resetting the amortization, increasing their payment, and increasing their interest rate from 4.250% to upwards of 7.000%, and which would allow them to keep their original, lower P&I payment;

(c) Loss of use of the $50,000.00 in PAHAF funds and having to eventually repay such amount of funds out of pocket or otherwise the loss of the equity in their home that these funds would have conferred;

(d) Legal fees, costs, and expenses related to the continued defense of the Foreclosure;

(e) Significant delay in the loss mitigation process and rehabilitation of their credit;

(f) Accrued interest, fees and charges imposed on the Loan including default servicing related fees since Nationstar's failure to reinstate the Loan through an SPC and otherwise Nationstar's refusal to bring their loan current through a partial claim in conjunction with the application of PAHAF funds for which Plaintiffs are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled; and,

(g) Severe emotional distress driven by Nationstar's failure to properly handle their review of Plaintiffs for an SPC and otherwise refusing to utilize PAHAF in conjunction with a partial claim as required by HUD and continued misrepresentations regarding the same and by justified fear that such blatant indifference to improper actions on would result in the sale of their Home at a foreclosure sale which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## FACTS RELEVANT TO PLAINTIFFS MS. VONNIEDA-LAGRASSA AND MS. MONROE

88.     Ms. McKenna fell upon financial hardships and defaulted on her obligations in relation to their FHA-insured mortgage loan.

89.     On or about March 2, 2023, Nationstar sent correspondence to Ms. McKenna stating consisting of and identified as a notice of intention to foreclosure upon her mortgage loan.

90.     In an attempt to resolve the delinquency on her mortgage loan, Ms. McKenna submitted an application for mortgage assistance with PAHAF.

91.     On or about April 19, 2023, Ms. McKenna was conditionally approved by PAHAF for $50,000.00 in mortgage assistance. *See*, a copy of an email thread between Ms. McKenna and PAHAF, attached as **Exhibit 10**.

92.     As of such date, the reinstatement amount for Ms. McKenna's loan was $69,870.75. *See*, Exhibit 10.

93.     To address the remaining reinstatement balance, Ms. McKenna attempted to work with Nationstar to obtain further loss mitigation relief.

94.     A Nationstar representative identified as Lester Sbastian, on or about April 20, 2023, notified Ms. McKenna that Nationstar started the process  to review her mortgage loan for

further loss mitigation assistance which was believed to be used in conjunction with the PAHAF funding.

95.    On or about May 15, 2023, Ms. McKenna forwarded a notice from Nationstar approving her for loss mitigation to PAHAF. *See*, a copy of an email thread between Ms. McKenna and PAHAF, attached as **Exhibit 11**; *see also*, a copy of the correspondence from Nationstar dated May 19, 2023 approving Ms. McKenna for a modification and partial claim, attached as **Exhibit 12**.

96.    Per the terms of the loss mitigation option provided, Ms. McKenna was issued a partial claim in the amount of $50,671.07, and the remaining modified balance would be modified at the following general terms:

> (a)  Total Monthly Payments $854.51
>
> (b)  Principal and Interest Payment $659.92
>
> (c)  Interest Rate 5.000%
>
> (d)  Remaining Term 480
>
> (e)  Maturity Date 05/01/2063
>
> (f)  Unpaid Principal Balance $227,863.03
>
> (g)  Interest Bearing Principal Balance $177,211.96

*See*,  Exhibit 12.

97.    That is, despite Ms. McKenna having $50,651.07 in partial claim funds available along with $50,000.00 in funding from PAHAF—well more than the amount necessary to reinstate her loan in full—Nationstar refused to use the PAHAF funds in conjunction with a SPC to reinstate her loan.

98.     Per PAHAF, the workout option provided, however, did not take the PAHAF funding of $50,000.00 into account and attempted to capitalize the full reinstatement amount to the modified balance of the loan and the related partial claim. *See*, Exhibits 11 and 12.

99.     Further, before PAHAF could issue the funding to Nationstar for Ms. McKenna's loan, Nationstar had to complete a "PAHAF Loss Mitigation Verification Form" and PAHAF indicated that if Nationstar did not fill out the form, that there was nothing PAHAF could do. *See*, Exhibit 11.

100.    To date, Nationstar has steadfastly refused to execute any necessary "PAHAF Loss Mitigation Verification Form" as requested by PAHAF and Ms. McKenna.

101.    On or about June 1, 2023, Ms. McKenna, through counsel, sent correspondence consisting of or constituting a notice of error to Nationstar at the Designated Address alleging that Nationstar committed various errors in relation to their loan by improperly refusing to apply PAHAF funds in conjunction with available partial claim funds to reinstate her loan (the "McKenna  NOE"). *See*, a copy of the McKenna NOE, attached as **Exhibit 13**.

102.    Despite Nationstar's receipt of the McKenna NOE, Nationstar has failed to correct its erroneous conduct and agree to apply the PAHAF funds in conjunction with Ms. McKenna's loss mitigation and has otherwise failed to perform a reasonable investigation into such errors.

103.    Ms. McKenna, fearful of foreclosure and that any subsequent loss mitigation option would be worse, reluctantly agreed to accept the partial claim and modification offered for her loan with the expectation that Nationstar could agree to apply the PAHAF funding once her loan had been reinstated through such option, which Nationstar stated was a possibility.

104.    To date, however, Nationstar has refused to apply the PAHAF funding in conjunction with any loss mitigation option available to Ms. McKenna despite the PAHAF funding and the available partial claim funds being more than sufficient to fully reinstate the loan and despite the PAHAF funds being nearly enough to payoff the partial claim in full.

105.    Nationstar's improper actions caused Ms. McKenna to suffer from actual and proximate damages including, but not limited to:

(a)    Being precluded from the opportunity to reinstate the Loan through a partial claim in conjunction with the application of PAHAF funds which would have reinstated the Loan, without needing to modify the Loan, thereby resetting the amortization and increasing the amount of interest that Ms. McKenna will be required to repay over the life of the loan;

(b)    Loss of use of the $50,000.00 in PAHAF funds and having to eventually repay such amount of funds out of pocket or otherwise the loss of the equity in her home that these funds would have conferred;

(c)    Significant delay in the loss mitigation process and rehabilitation of her credit;

(d)    Significant lost time and expenses utilized in attempts to have Nationstar adhere to HUD Guidelines and cooperate with PAHAF on accepting the PAHAF funding for her loan;

(e)    Severe emotional distress driven by Nationstar's failure to properly handle their review of Plaintiff for refusing to utilize PAHAF in conjunction with a partial claim as required by HUD and continued misrepresentations regarding the same and by justified fear that such blatant indifference to improper actions on would result in

the sale of her Home at a foreclosure sale which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## CLASS ACTION ALLEGATIONS

106.    **Partial Claim Class Definition**: Ms. VonNieda-LaGrassa and Ms. Monroe bring this action pursuant to Fed. Civ. R. 23 on behalf of a class of similarly situated individuals and entities (the "Recovery Modification Class"), defined as follows:

All loan borrowers in the State of Pennsylvania, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgages are insured by the FHA, (3) whose mortgage loans are serviced by Nationstar, (4) who sought loss mitigation relief due to direct or indirect impact from the Presidentially-Declared COVID-19 National Emergency, (5) whose available partial claim funds were sufficient to reinstate their loan via a Standalone Partial Claim; (6) for who Nationstar refused to issue a Standalone Partial Claim to reinstate their loans .

Excluded from the Partial Claim Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Partial Claim Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

107.    **HAF Partial Claim Class Definition:** Plaintiffs bring this action pursuant to Fed. Civ. R. 23 on behalf of a class of similarly situated individuals and entities (the "HAF Partial Claim Class"), defined as follows:

All loan borrowers in the State of Pennsylvania, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgages are insured by the FHA, (3) whose mortgage loans are serviced by Nationstar, (4) who sought loss mitigation relief due to direct or indirect impact from the Presidentially-Declared COVID-19 National Emergency, (5) who were approved for HAF funds through PAHAF; (6) whose PAHAF funds were insufficient to reinstate their loan; (7) who could have fully reinstated a loan through application of the PAHAF funds in conjunction with available partial claim funds, and (8) for who Nationstar refused to use the PAHAF funds in conjunction with their available partial claims to reinstate their loans .

Excluded from the HAF Partial Claim Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the HAF Partial Claim Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

108.    **NOE Subclass Definition**: Plaintiffs also bring this action pursuant to Fed.

Civ. R. 23 on behalf of a subclass of similarly situated individuals and entities ("the NOE

Subclass"), defined as follows:

All loan borrowers in the State of Pennsylvania, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgages are insured by the FHA, (3) whose mortgage loans are serviced by Nationstar, (4) who sought loss mitigation relief due to direct or indirect impact from the Presidentially-Declared COVID-19 National Emergency, (5) for who Nationstar refused to use PAHAF funds in conjunction with their available partial claims to reinstate their loans, (6) who sent a notice of error to Nationstar regarding the same, and (7) did not receive an adequate response to the same.

Excluded from the NOE Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the NOE Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

109.    **Numerosity and Ascertainability**: Upon information and belief, the

Classes are each comprised of more than forty (40) members, such that the Classes are so

numerous that joinder of all members is impractical. This conclusion is reasonable because

as of July 20, 2022, Nationstar was the largest nonbank home loan servicer in the United

States and the fourth largest servicer overall.[3] Moreover, as the loss mitigation at issue centers around individuals impacted by the COVID-19 pandemic which affected nearly every family in the country, if not the world, it is expected that a higher percentage of borrowers than would be typical are loss mitigation relief for their FHA Loans. The exact number of members in the Classes is presently unknown and can only be ascertained through discovery. Class members can easily be identified through Defendant's records or by other means.

110.    **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions. Simply put, Nationstar failed to issue SPCs when there were sufficient funds available to Plaintiffs and Partial Claim Class members for the same. Further, Nationstar otherwise improperly refused to utilize Plaintiffs' and HAF Partial Claim Class members' PAHAF funds in conjunction with available partial claim funds to reinstate their loans. Lastly, Nationstar failed to properly respond to NOE Subclass members' notices of error regarding the aforementioned conduct. There are questions of law and fact common to the proposed Classes that predominate over any individual questions, including:

(a) Whether Nationstar's failure or refusal to implement SPCs for Ms. VonNieda-LaGrassa's, Ms. Monroe's, and Partial Claim Class members' loans to reinstate their loans was improper;

(b) Whether Nationstar's refusal to utilize Plaintiffs' and HAF Partial Claim Class members' PAHAF funds in conjunction with available partial claim funds to reinstate their loans was improper;

---

[3] https://money.usnews.com/loans/mortgages/reviews/mrcooper-mortgage (last accessed November 14, 2022).

(c)  Whether Nationstar properly responded to the notices of error sent by or on behalf of the members of the NOE Subclass;

(d)  Whether Plaintiffs and members of the Classes suffered actual damages, and the measure and amount of those damages; and,

(e)  Whether Plaintiffs and members of the NOE Subclass are entitled to recover statutory damages.

(f)  Whether Plaintiffs and members of the Partial Claim  Class and the HAF Partial Claim Classes are entitled to recover treble damages.

111.    **Typicality**: Plaintiffs' claims are typical of the claims of the Classes. On information and belief, Plaintiffs' and members of the Classes' loans contain substantially similar language, as they were drafted using standardized templates or uniform instruments common to all loans insured by the FHA, contain substantially similar language to such documents, or are otherwise bound by or subject to the same guidelines contained in the SF Handbook. As such, Plaintiffs and members of the Classes were subjected to and affected by a uniform course of conduct; specifically, Nationstar's improper refusal to issue SPCs and/or Nationstar's improper  refusal to utilize Plaintiffs' and HAF Partial Claim Class members' PAHAF funds in conjunction with available partial claim funds to reinstate their loans.

112.    **Adequacy**: Plaintiffs will adequately represent the interests of the Classes and do not have adverse interests to the Classes. Plaintiffs' counsel has extensive experience litigating consumer class actions.

113.    **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual members of the Classes prosecuted

separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

**COUNT ONE:**
**VIOLATIONS OF THE UTPCPL,**
**(73 Pa. C.S. § 201-1, *et seq.*)**
**(On behalf of Ms. VonNieda-LaGrassa, Ms. Monroe, and the Partial Claim Class)**

114.    Plaintiffs repeat and reallege paragraphs 1 through 113 with the same force and effect as though fully set forth herein.

115.    Ms. VonNieda-LaGrassa, Ms. Monroe, and each member of the Classes, and Nationstar are each a "person" under the UTPCPL as each is a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity. 73 Pa. C.S. § 201-2(2).

116.    Nationstar's actions in servicing the Ms. VonNieda-LaGrassa's, Ms. Monroe's, and Partial Claim Class members' loans constitute "trade" or "commerce" under the UTPCPL, as such actions are services performed in relation to real property or thing of value and is commerce directly affecting the people of the Commonwealth of Pennsylvania. 73 Pa. C.S.§ 201-(3).

117.    "'Unfair methods of competition' and 'unfair or deceptive acts or practices' mean any one or more of the following [...] (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. C.S.§ 201-(4)(xxi).

118.    Nationstar, in refusing or failing to issue SPCs in relation to Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class members' loans despite such individuals having sufficient partial claim funds available to reinstate their loans, constitute

fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding in relation to the loans in violation of the UTPCPL.

119.    Nationstar, in sending correspondence stating or otherwise communicating to Ms. VonNieda-LaGrassa, Ms. Monroe, and each Partial Claim Class member that they were ineligible for an SPC to reinstate their loans despite such individuals having sufficient partial claim funds available to reinstate their loans, engaged in conduct constituting fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding in violation of the UTPCPL.

120.    As a result of Nationstar's conduct, Nationstar is liable to Ms. VonNieda-LaGrassa, Ms. Monroe, and  Partial Claim Class members for actual damages, as further described, *supra*, as well as treble damages, and reasonable attorneys' fees and costs incurred in connection with this action. 73 Pa. C.S. § 201-9.2.

**COUNT TWO:**
**VIOLATIONS OF THE UTPCPL,**
**(73 Pa. C.S. § 201-1, *et seq.*)**
**(On behalf of Plaintiffs and the HAF Partial Claim Class)**

121.    Plaintiffs repeat and reallege paragraphs 1 through 120 with the same force and effect as though fully set forth herein.

122.    Plaintiffs, each member of the Classes, and Nationstar are each a "person" under the UTPCPL as each is a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity. 73 Pa. C.S. § 201-2(2).

123.    Nationstar's actions in servicing the Plaintiffs' and HAF Partial Claim Class members' loans constitute "trade" or "commerce" under the UTPCPL, as such actions are services performed in relation to real property or thing of value and is commerce directly affecting the people of the Commonwealth of Pennsylvania. 73 Pa. C.S.§ 201-(3).

124.    "'Unfair methods of competition' and 'unfair or deceptive acts or practices' mean any one or more of the following [...] (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. C.S.§ 201-(4)(xxi).

125.    Nationstar's conduct, in refusing to utilize Plaintiffs' and HAF Partial Claim Class members' PAHAF funds in conjunction with available partial claim funds to reinstate their loans, constitute fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding in relation to the loans in violation of the UTPCPL.

126.    Nationstar, in sending correspondence stating or otherwise communicating to Plaintiffs and each HAF Partial Claim Class member that it refused to utilize Plaintiffs' and HAF Partial Claim Class members' PAHAF funds in conjunction with available partial claim funds to reinstate their loans, engaged in conduct constituting fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding in violation of the UTPCPL.

127.    As a result of Nationstar's conduct, Nationstar is liable to Plaintiffs and HAF Partial Claim members for actual damages, as further described, *supra*, as well as treble damages, and reasonable attorneys' fees and costs incurred in connection with this action. 73 Pa. C.S. § 201-9.2.

## <u>COUNT THREE:</u>
**Violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k)**
**(On behalf of Plaintiffs and the NOE Subclass)**

128.    Plaintiffs repeat and reallege paragraphs 1 through 113 with the same force and effect as though fully set forth herein.

129.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

130.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

131.    A servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

132.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

133.    "A servicer of a federally related mortgage shall not...fail to take timely

action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

134.    A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

135.    Plaintiffs and each NOE Subclass member, sent notices of error (the "NOEs") to Nationstar at the Designated Address alleging that Nationstar committed errors by refusing to use their PAHAF funds in conjunction with their available partial claims to reinstate their loans. *See*, Exhibits 6 and 13.

136.    Nationstar failed to adequately respond to the NOEs in violation of 12 C.F.R. § 1024.35(e) as Nationstar failed to admit and correct the alleged errors or otherwise failed to perform a reasonable investigation into said errors, if Nationstar responded at all. *See*, Exhibits 6, 8, and 13.

137.    Had Nationstar performed a reasonable investigation into the errors alleged through the NOEs, Nationstar would have plainly uncovered that its refusal to utilize Plaintiffs' and HAF Partial Claim Class members' PAHAF funds in conjunction with available partial claim funds to reinstate their loans was contrary to HUD policies and guidelines.

138.    Nationstar's failures to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOEs constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and has caused Plaintiffs and NOE

Subclass members to suffer actual damages as detailed, *supra*.

139.    Nationstar's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' and NOE Subclass members' rights and Nationstar's obligations under RESPA and Regulation X.

140.    Nationstar's conduct as pleaded, *supra*, shows a conscious disregard for Plaintiffs' and NOE Subclass Members' rights and Nationstar's obligations under RESPA and Regulation X.

141.    As a result of Nationstar's actions, Nationstar is liable to Plaintiffs and NOE Subclass members for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiffs Michelle VonNieda-LaGrassa and Ashley Monroe, individually and on behalf of all others similarly situated, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Partial Claim Class, as defined, *supra*;

B.    Designating Michelle VonNieda-LaGrassa and Ashley Monroe as representative of the Partial Claim Class and their undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Michelle VonNieda-LaGrassa, Ashley Monroe, and the Partial Claim Class, the HAF Partial Claim Class, and the NOE Subclass, and against Defendant;

D.    Awarding Michelle VonNieda-LaGrassa, Ashley Monroe, and the Partial Claim Class, their actual damages;

E.  Awarding Michelle VonNieda-LaGrassa, Ashley Monroe, and the Partial Claim Class, treble damages as allowed under the UTPCPL;

F.  Awarding Michelle VonNieda-LaGrassa, Ashley Monroe, and the Partial Claim Class, attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

G.  Granting all such further and other relief as this Court deems just and appropriate.

WHEREFORE, Plaintiffs Michelle VonNieda-LaGrassa, Ashley Monroe, and Joanna McKenna, individually and on behalf of all others similarly situated, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the HAF Partial Claim Class, and the NOE Subclass, each as defined, *supra*;

B.  Designating Plaintiffs as representative of the HAF Partial Claim Class, and the NOE Subclass, and their undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiffs, the HAF Partial Claim Class, and the NOE Subclass, and against Defendant;

D.  Awarding Plaintiffs, the HAF Partial Claim Class, and the NOE Subclass, their actual damages;

E.  Awarding Plaintiffs, the HAF Partial Claim Class treble damages as allowed under the UTPCPL;

F.  Awarding Plaintiffs and the NOE Subclass their statutory damages as allowed under RESPA;

G.  Awarding Plaintiff, the HAF Partial Claim Class, and the NOE Subclass, attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

H.  Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

LAW OFFICE OF JOSEPH M. ADAMS

By:    <u>/s/ Joseph M. Adams</u>
        Joseph M. Adams, Esq.
        Attorney ID: 58430
        200 Highpoint Drive
        Suite 211A
        Chalfont, PA  18914
        josephmadamsesq@verizon.net
        215-996-9977

Brian D. Flick (Ohio #0081605)
(*pro hac vice* anticipated)
Daniel M. Solar (Ohio #0085632)
(*pro hac vice* anticipated)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiffs Michelle VonNieda-LaGrassa, Ashley Monroe, Joanna McKenna and the Putative Classes*

## JURY DEMAND

Plaintiffs Michelle VonNieda-LaGrassa, Ashley Monroe, and Joanna McKenna, individually and on behalf of all others similarly situated hereby request a trial by jury on all issues.

LAW OFFICE OF JOSEPH M. ADAMS

By:    <u>*/s/ Joseph M. Adams*</u>
        Joseph M. Adams
        Attorney ID: 58430
        200 Highpoint Drive
        Suite 211A
        Chalfont, PA  18914
        josephmadamsesq@verizon.net
        215-996-9977

Brian D. Flick (Ohio #0081605)
(*pro hac vice* anticipated)
Daniel M. Solar (Ohio #0085632)
(*pro hac vice* anticipated)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiffs Michelle VonNieda-LaGrassa, Ashley Monroe, Joanna McKenna and the Putative Classes*