IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MICHELLE VONNIEDA-LAGRASSA, individually and on behalf of all others similarly situated, *et al.*,<br>    Plaintiffs,<br><br>    v.<br><br>NATIONSTAR MORTGAGE LLC, d/b/a RIGHTPATH SERVICING,<br>    Defendant. | Civil No. 5:23-cv-03407-JMG |

MEMORANDUM OPINION

GALLAGHER, J.                           November 7, 2024

## I. OVERVIEW

Plaintiffs Michelle VonNieda-LaGrassa, Ashley Monroe, and Joanna McKenna, individually and on behalf of all others similarly situated, bring this class action lawsuit against Defendant Nationstar Mortgage LLC alleging violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 12 C.F.R. § 1024.35(e)(1)(i), and 12 U.S.C. §§ 2605(e) and (k). This Court previously granted Defendant's Motion to Dismiss and granted Plaintiffs leave to amend, which they did. Defendant now moves to dismiss the Amended Complaint.

At the core of Plaintiffs' suit is the argument that the United States Department of Housing and Urban Development ("HUD") requires mortgagees providing COVID-19 loss mitigation relief to offer loan modifications in conjunction with additional funds from the Homeowner Assistance Fund ("HAF"). Because the Court rejects this theory, the Motion to Dismiss will be granted.

II. BACKGROUND

A. COVID-19 Recovery Loss Mitigation Options

This case begins not with the actions of the parties but those of the government. Residential mortgage loans insured by the Federal Housing Administration ("FHA") contain contract provisions requiring lenders to comply with the rules and regulations promulgated by the Secretary ("Secretary") of HUD. The Single Family Housing Policy Handbook 4000.1 ("Handbook") sets out the Secretary's regulations regarding the servicing of FHA-insured loans for single family homes. The Handbook requires mortgagees to ensure that all delinquent mortgages insured by the FHA are serviced in accordance with FHA requirements and to "utilize HUD's Loss Mitigation Options to avoid foreclosure, when feasible." SF Handbook 4000.1 at III.A.2.a.ii, III.A.2.j.

In response to the global COVID-19 pandemic, HUD updated the Handbook. One of the updates provided for loss mitigation relief called "COVID-19 Recovery Loss Mitigation Options" to borrowers "impacted, directly or indirectly by COVID-19." SF Handbook 4000.1.III.A.2.o.iii.(A). In reviewing a borrower for COVID-19 loss mitigation, the first step is to determine whether the borrow qualifies for a "Standalone Partial Claim" ("SPC") to reinstate their mortgage. *See* SF Handbook at III.A.2.o.iii.(C)(1). The Handbook explains that a borrower is eligible for an SPC if (1) the "property is owner-occupied" and (2) "the [b]orrower indicates that they have the ability to resume making on-time Mortgage Payments." SF Handbook at III.A.2.o.iii.(C)(1)(a).

Changes to the Handbook were not the government's only response to COVID-19's havoc on mortgage holders. The American Rescue Plan Act of 2021 established the Homeowner Assistance Fund to provide about $10 billion in funds to mitigate financial hardship caused by the disease. *See* 15 U.S.C.S. § 9058d(c). HAF distributed funds to borrowers through state agencies.

In Pennsylvania, for example, the Pennsylvania Housing Financing Agency administered HAF funds and distributed these funds to borrowers for assistance with mortgage payments and other specified purposes.

HUD has provided guidance to mortgagees on how SPCs and HAF funds may be used together. The Handbook explains that "[a]s permitted by the jurisdiction's HAF program, HAF funds may be used in connection with the Borrower's FHA-insured Mortgage or any Partial Claim Mortgage in a manner consistent with the respective mortgage documents and FHA requirements." SF Handbook at III.A.2.o.iii.(B)(5). On its website, in response to a Frequency Asked Question ("FAQ"), HUD did not use the same language to explain the relationship between SPCs and HAF funds, stating that "HAF funds designated to cure a delinquent mortgage must be used in connection with the Borrower's FHA-insured mortgage or any partial claim mortgage in a manner consistent with the respective mortgage documents and FHA requirements." Pls.' Resp. Mot. Dismiss, ECF No. 33, at Doc. 33-2. Despite HUD's use of different language in the FAQ, it has not made any changes to the Handbook.

### B. Plaintiffs' Allegations

Now the Court turns to the parties' actions. After the outbreak of COVID-19, Plaintiffs faced financial struggles and defaulted on their FHA-insured mortgage loans. Defendant, their mortgage servicer, initiated foreclosure proceedings against them. During these proceedings, Defendant reviewed their cases and offered loss mitigation relief to reinstate the loans. Specifically, Defendant offered Plaintiffs a loan modification—namely an SPC—but did not include in those SPCs additional funds available through HAF.

But Plaintiffs allege that this response was improper. According to Plaintiffs, HUD—in the Handbook and FAQ—required mortgagees offering loss mitigation relief to approve borrowers

3

for an SPC using additional HAF funds. This requirement would provide borrowers with more funds to reinstate their loans. By failing to follow this directive, however, Plaintiffs allege that Defendant prevented them from reinstating their delinquent mortgages.

### C. Procedural History

At the very end of August 2023, Plaintiffs filed this class action lawsuit against Defendant. The suit alleged that Defendant's failure to offer borrowers an SPC using HAF funds led to two legal violations. First, Plaintiffs argued that this failure "constitute[d] fraudulent or deceptive conduct . . . in violation of the UTPCPL." Compl. ¶ 118. Second, Plaintiffs claimed that this failure violated 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) because, after being notified by Plaintiffs through Notices of Error ("NOEs") that it did not comply with HUD's requirements, Defendant "fail[ed] to perform a reasonable investigation into and otherwise properly respond to the [alleged] errors." Compl. ¶ 138.

On October 17, 2023, Defendant moved to dismiss Plaintiffs' initial Complaint. The Court found that Plaintiffs did not allege "any actual misrepresentations beyond Defendant's interpretation of the regulations." Order, ECF No. 32, at 2 n.1. The Court also found that Plaintiffs did not allege that Defendant failed to conduct a reasonable investigation or correct an error. *See id*. Rather, Plaintiffs' claims focused on "two different interpretations of the same regulations." *Id*. But the Court concluded that a disagreement about the correct interpenetration of HUD's regulations is not enough to sufficiently plead violations of the UTPCPL, 12 C.F.R. § 1024.35(e), and 12 U.S.C. §§ 2605(e) and (k). So, in the very beginning of May 2024, this Court granted the Motion to Dismiss and granted Plaintiffs leave to amend. Plaintiffs then filed an Amended Complaint asserting the same claims and Defendant again filed a Motion to Dismiss.

4

### III. LEGAL STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

### IV. ANALYSIS

#### A. UTPCPL Claim

Defendant moves to dismiss Plaintiffs' claim under the UTPCPL in Counts One and Two of the Amended Complaint. The UTPCPL is "'a remedial statute intended to protect consumers from unfair or deceptive practices or acts' in the conduct of trade or commerce." *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 810 (E.D. Pa. 2016) (quoting *Balderston v. Medtronic*

*Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001)). "To establish a claim under the UTPCPL for deceptive conduct, a plaintiff must demonstrate: '(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss.'" *Id*. (quoting *Slapikas v. First American Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014)).

In its first ruling on Defendant's Motion to Dismiss, this Court held that Plaintiffs failed to establish a deceptive act because their claim was "based upon two differing interpretations of the same regulations" and a disagreement over the correct interpretation of regulations was not sufficient to establish a knowing misrepresentation under the UTPCPL. Order, ECF No. 32, at 2 n.1. Rather than address this deficiency by alleging additional facts showing that Defendant made a false promise or other misrepresentation, Plaintiffs claim that their interpretation of the Handbook sufficiently alleges a misrepresentation because "[t]here is no ambiguity in the pla[i]n language of the [] provisions and reasonable minds could not come to any differing conclusion than that mortgagees, such as [Defendant], must offer a[n] SPC [utilizing HAF funds] to a borrower so long as the requirements of SF Handbook at III.A.2.o.iii.(C)(1) are met." Am. Compl. ¶ 25. In other words, Plaintiffs allege that Defendant's failure to offer Plaintiffs an SPC using HAF funds is a misrepresentation because the Handbook imposes a mandatory obligation on Defendant to do so and refusing to follow this order constitutes a deceptive act under the UTPCPL.

The Court is not persuaded by Plaintiffs' argument. Federal courts have recognized that "HUD handbooks do not consist of binding regulations." *United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 133 (S.D.N.Y. 2015); *Mathews v. PHH Mortg. Corp.*, 2020 WL 5260813, at *2 (N.D. Okla. Sept. 3, 2020). Instead, "the various 'handbooks' and 'booklets' issued by HUD contain mere 'instructions,' 'technical suggestions,' and 'items for consideration.'" *E. River Hous.*

6

*Corp.*, 90 F. Supp. 3d at 133 (quoting *Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 275 (1969)). On its own then the "Handbook does not bind the Court," *Matthews*, 2020 WL 5260813, at *2 (quotation omitted), or provide Plaintiffs with a private cause of action. *See Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 128-29 (3d Cir. 2018) ("As the District Court correctly recognized, [the Home Affordable Modification Program] does not provide a private cause of action."); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360-61 (5th Cir. 2014) (concluding that HUD Handbook does not provide private cause of action).

But even if the Handbook could bind this Court, its plain language does not support Plaintiffs' interpretation. The Handbook provides that "[a]s permitted by the jurisdiction's HAF program, HAF funds *may* be used in connection with the Borrower's FHA-insured Mortgage or any Partial Claim Mortgage in a manner consistent with the respective mortgage documents and FHA requirements." III.A.2.o.iii.(B)(5) (emphasis added). As Defendant points out, the Handbook states that "HAF funds *may be used*," not that the funds *must* be used. Def's Mot. Dismiss, ECF No. 36, at 9 n.6 (emphasis added). The Handbook's use of permissive language thus provides mortgagees with an option instead of an obligation to use HAF funds in connection with SPCs.

Plaintiffs attempt to avoid the plain reading of the Handbook by pointing to the preceding sentence, which provides that "[t]he Mortagee *must* inform the Borrower, utilizing any available method of communication, that they can apply for the Department of Treasury's Homeowner Assistance Fund (HAF), if HAF is available in their jurisdiction." III.A.2.o.iii.(B)(5) (emphasis added). According to Plaintiffs, this sentence imposes a mandatory duty on mortgagees to offer an SPC utilizing HAF funds because it does not make sense for HUD to require mortgagees to inform borrowers of the availability of HAF funds if the mortgagees did not have a corresponding duty to use such funds in connection with SPCs. This reasoning contains a logical flaw: Plaintiffs merely

speculate as to why HUD imposed a responsibility on mortgagees to inform borrowers of the availability of HAF funds and then they argue, without support, that this presumptive reason can only make sense if the following sentence is read through a mandatory lens.

The Handbook's plain meaning reveals Plaintiffs' error. In Section III.A.2.o.iii.(B)(5)'s preceding sentence, the mandatory language established with the word "must" imposes on mortgagees a duty to inform borrowers that they can apply for HAF funds. The immediately following sentence does not contain mandatory language and instead uses permissive language such as "may" to provide mortgagees with the option to use HAF funds in connection with SPCs. Plaintiffs cannot avoid the plain meaning of these two sentences by speculating as to the reason for why the first sentence includes mandatory language to claim that the second sentence also imposes mandatory duties when that sentence clearly employs permissive language.

Plaintiffs also try to avoid the Handbook's plain meaning by turning to HUD's website. HUD's FAQ, located online and still current today, provides that "HAF funds designated to cure a delinquent mortgage *must* be used in conjunction with the Borrower's FHA-insured mortgage or any partial claim mortgage in a manner consistent with the respective mortgage documents and FHA requirements." Pls.' Resp. Mot. Dismiss, ECF No. 33, at Doc. 33-2 (emphasis added). Plaintiffs argue that this sentence is HUD's clarification that mortgagees like Defendant have an obligation to offer SPCs utilizing HAF funds.

While Plaintiffs are correct that this sentence—unlike the second sentence in Section III.A.2.o.iii.(B)(5)—uses mandatory language, that language comes not from the Handbook but from HUD's website. Plaintiffs "present[] no information as to [the FAQ's] authorship or definitiveness." *Ace-Fed. Reps., Inc. v. United States*, 150 Fed. Cl. 94, 113 (2020). Further, "[HUD] did not present [Plaintiffs'] preferred interpretation—or any other interpretation—to the

8

Court because [HUD] is not party to this case." *Id*. (citing *Hydro Res., Inc. v. United States Env't Prot. Agency*, 608 F.3d 1131, 1146 n.10 (10th Cir. 2010)). "Granting deference to [] [Plaintiffs'] interpretation of a nonlitigating agency's website would require the Court to speculate what [HUD's] position would be on the weight and meaning of the website." *Id*. The Court refuses to grant such deference, especially when the plain meaning of HUD's Handbook—the clearest indication the Court has of HUD's own interpretation—uses contradictory language.

Because Plaintiffs' interpretation of the Handbook and FAQ is untenable, they cannot allege a deceptive act and fail to state a plausible UTPCPL claim. The Court then grants the Motion to Dismiss Plaintiffs' UTPCPL claim in Counts One and Two of the Amended Complaint.

### B. RESPA Claim

Defendant also moves to dismiss Plaintiffs' claims for violations of 12 C.F.R. § 1024.35(e)(1)(i) and 12 U.S.C. §§ 2605(e) and (k) in Count Three of the Amended Complaint. Under 12 C.F.R. § 1024.35(e)(1)(i), a servicer must respond to an NOE by either correcting the error or conducting a reasonable investigation and providing certain notices. 12 C.F.R. § 1024.35(e)(1)(i). As for 12 U.S.C. §§ 2605(e) and (k), they are sections of the Real Estate Settlement Procedures Act ("RESPA"), and they essentially require the mortgage servicer to "respond by fixing the error, crediting the borrower's account, and notifying the borrower; or by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016).

In its first decision on Defendant's Motion to Dismiss, this Court dismissed Count Three of Plaintiffs' original Complaint because, by claiming that Defendant failed to correct its error of not offering SPCs utilizing HAF funds after investigating and responding to Plaintiffs' NOEs,

9

Plaintiffs essentially "disagree[d] with the decisions Defendant reached after conducting its investigation . . . which is insufficient to plead a plausible claim under Section 1024.35." Order, ECF No. 32, at 2 n.1. In their Amended Complaint, Plaintiffs reiterate that "reasonable minds could not come to any differing conclusion than that if a jurisdiction's HAF program permits funds issued through its program to be used in conjunction with loss mitigation options offered by HUD, *specifically including partial claims*, then a servicer *must* utilize these funds in conjunction with such options." Am. Compl. ¶ 150 (emphasis in original).

Plaintiffs' theory is that if mortgagees had an obligation to offer SPCs utilizing HAF funds and failed to correct its failure to follow this duty after conducting an investigation in response to Plaintiffs' NOEs, then the investigation was "*per se* unreasonable," which establishes a claim under Section 1024.35. Am. Compl. ¶ 151. This reasoning attempts to establish a legal violation under Section 1024.35 by claiming that HUD required mortgagees to offer SPCs utilizing HAF funds—which is how Plaintiffs also try to plead a claim under the UTPCPL.

The problem for Plaintiffs is that this interpretation is not supported by the plain meaning of the Handbook. Because the Court rejects Plaintiffs' interpretation, Defendant did not engage in a *per se* unreasonable investigation and Plaintiffs have failed to plead a plausible RESPA violation. Thus, the Court also grants the Motion to Dismiss Count Three of the Amended Complaint.

## V.  CONCLUSION

All of Plaintiffs' claims rely on interpreting HUD's regulations to mean that mortgagees must offer SPCs using additional HAF funds. That interpretation is untenable, so Defendant's

Motion to Dismiss Plaintiffs' Amended Complaint is granted with prejudice.[1] An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[1] Dismissal with prejudice is appropriate because granting leave to amend would be futile since Plaintiffs cannot establish any claims without the Court's recognition of their interpretation of the Handbook and FAQ. *See Spartan Concrete Prod., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (holding that denying leave to amend is appropriate on grounds of "undue delay, bad faith, dilatory motive, prejudice, and futility") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).